# Hewitt, Appellant, *v.* Webb.

*Contracts—Construction—Services as architect—Directed verdict for defendant.*

In an action to recover a balance alleged to be due the plaintiffs for services as architects in preparing plans and specifications and superintending the construction of a warehouse, it appeared that plaintiffs' offer in writing was "to furnish professional services for a commission of 3½ per cent. on the cost of completed building, and of this amount a sum of $6,000.00 would be charged for the preparation of preliminary sketches, plans, elevations, specifications, and sufficient detailed information to enable contractors to submit proposals. This charge is based upon the understanding that if the work is carried out it is to be placed with our firm for completion." The defendant accepted this offer stating, "when we do go ahead with it (the building), have made up our minds that it will be done under your supervision." On completion of the plans the defendant paid to the plaintiffs the sum of $6,000.00. Subsequently the defendant erected a warehouse from plans not made by the plaintiffs, the building as erected being smaller, different in form, design and details than the plans furnished by the plaintiffs required, and cost about $100,000.00 less than the estimated cost of the building designed in the original plans. *Held,* the defendant was not required to employ the services of the plaintiff as architects in the construction of another and different building erected on the premises according to plans and specifications different from those prepared by the plaintiffs, and the verdict was properly directed for the defendant.

Argued March 23, 1916. Appeal, No. 20, Jan. T., 1916, by plaintiffs, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1913, No. 2315, on directed verdict for defendant in case of William D. Hewitt, Benjamin R. Stevens and Phineas E. Paist, to the use of William D. Hewitt and Phineas E. Paist, copartners, late trading as Hewitt and Paist v. Charles J. Webb. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit to recover balance alleged to be due for architect's services.  Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

The court directed a verdict for the defendant and entered judgment thereon.  Plaintiffs appealed.

*Error assigned,* among others, was in directing a verdict for the defendant.

*James McMullan,* with him *Arthur G. Dickson,* for appellants.

*Frank P. Prichard,* with him *James Wilson Bayard,* and *John G. Johnson,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 17, 1916:

This is an action of assumpsit to recover on a quantum meruit a balance alleged to be due the plaintiffs for services as architects in preparing plans and specifications and superintending the construction of a warehouse at Delaware avenue and Walnut street, in the City of Philadelphia.  The written contract is contained in the correspondence between the plaintiffs and Charles J. Webb & Company, Incorporated, then owner of the premises on which the building was to be erected.

In a letter written January 11, 1909, to the corporation, the plaintiffs proposed "to furnish professional services for a commission of 3½ per cent. on the cost of completed building and of this amount a sum of $6,000.00 would be charged for the preparation of preliminary sketches, plans, elevations, specifications and sufficient detailed information to enable contractors to submit proposals.  This charge is based upon the understanding that if the work is carried out it is to be placed with our firm for completion."  The corporation replied to the plaintiffs' letter on January 14, 1909, saying, inter alia: "We understand that you would be willing to go ahead and make the plans and specifications and working de-

tails and get bids and superintend the actual construction, should we decide to go ahead with the building, on a basis of 3½ per cent. of the cost of the building. We understand that you expect a payment of $6,000.00, on account of this 3½ per cent., upon the completion of the plans and specifications and the getting in of the bids from various builders. If we are correct in our understanding, we will say to you that we are now ready to go ahead on this basis. As to whether or not we will go right on and complete the building, will depend entirely on the figures we get, but when we do go ahead with it, have made up our minds that it will be done under your supervision, and for this we are to pay a sum total of 3½ per cent. on the cost of the building, but for the papers and everything necessary in order to get us bids, a sum total of $6,000.00, which is to be deducted from the amount that 3½ per cent. on the total cost of the building will figure out."

The same day the plaintiffs confirmed in writing the corporation's understanding of the contract. The plans were completed and discussed by the parties, approximate estimates were to be furnished and the corporation was to consider the matter and let the plaintiffs know whether they were to proceed with the construction of the building. The plaintiffs estimated the cost of the building, if erected according to their plans and specifications, at $577,634.38. Five thousand dollars were paid the plaintiffs on their commissions, and subsequently, in May, 1909, a check for $1,000.00 was sent to the plaintiffs and a receipt returned for "one thousand dollars final payment drawing plans Delaware avenue and Walnut street."

It appears from the evidence that about nine months after the plans and specifications were completed, the corporation went into voluntary liquidation, that Charles J. Webb, the substituted defendant, purchased the assets, including the real estate, and assumed the debts of the corporation. He formed a partnership with

three other stockholders of the old corporation and put into the firm some of the assets which he had purchased from the corporation, but retained title to the real estate.

In October, 1911, the plaintiffs wrote the corporation calling attention to a newspaper item that the latter intended to proceed with the construction of the warehouse, and reminding it of the correspondence relating to professional services in connection with the work. Charles J. Webb & Company replied that Charles J. Webb & Company, Incorporated, had retired from business and had nothing to do with the building about to be erected which was for the Webb Terminal Warehouse Company, that the plans prepared by plaintiffs had been paid for in full, and that entirely different plans were adopted for the proposed building.

Charles J. Webb procured plans and specifications from other achitects in 1911, and in the autumn of that year erected a warehouse on real estate at Delaware avenue and Walnut street, a part of which had formerly belonged to the corporation.

The plaintiffs allege that the warehouse erected by Webb was a building of the type of construction and general character suggested by plaintiffs in their plans and specifications, that they notified defendant of their readiness to proceed under the contract, and that defendant refused to permit them to do so. They instituted this suit to recover the fair and reasonable value of their services which they allege is three-fifths of the entire fee which the corporation agreed to pay plaintiffs for their services on the estimated cost of the building. They claimed this amount less a credit of $6,000.00 paid them on the completion of the plans and specifications. The defendant denies the right of the plaintiffs to recover anything in this action. He claims that the warehouse erected by him was not built according to the plans and specifications prepared by the plaintiffs, and that the building was smaller, different in form, design and details in the plans, and cost about $100,000.00 less than

the estimated cost of the building designed by the plaintiffs.

The right of the plaintiffs to recover depends upon the interpretation of the contract between them and the corporation. We do not agree with their construction of the contract. The plaintiffs contend that, under its terms, they had the right to act as architects and superintend the construction of any warehouse the corporation erected on the premises at Delaware avenue and Walnut street, that the corporation could have required them to modify or change the plans and specifications which they did furnish or prepare other plans and specifications so as to meet its approval, and that a mutual or like obligation rested upon it to accept such modified or changed plans and permit the plaintiffs, as architects, to superintend the construction of any warehouse erected at the place designated in their agreement. On the contrary, we are of the opinion that it was the intention of the parties, as disclosed by their agreement, that the corporation was required to pay the plaintiffs $6,000.00 for the preliminary work of preparing the plans and specifications and securing bids on a building to be erected in accordance therewith, but the corporation had the right to reject and not use the plans in the erection of a warehouse, and could employ other architects to plan and superintend the erection of a warehouse different from the building designed and planned by the plaintiffs. This was done. The balance of the commission was only payable to plaintiffs "if the work is carried out" by the owner of the premises, which was the construction of a building in conformity with the plans and specifications submitted by the plaintiffs. The corporation had the right to refuse to carry out the work under those plans and specifications. The plaintiffs had the right to superintend the work, in the language of the contract, "should we (the corporation) decide to go ahead with the building," but manifestly could not insist on the right to su-

pervise the erection of a building planned by another architect and different in design, shape and size from the building planned by the plaintiffs. It is apparent that the principal reason why the corporation did not wish to erect a building according to the plaintiffs' plans was, as suggested in the contract, that the cost would be too great. The corporation certainly could reject the plans and decline to proceed to erect a building in conformity with them if it did not approve the form or design of the building or if it did not think that, if erected in conformity with the plans, the building would serve the purpose for which it was intended. The purpose in dividing the commission and permitting the defendant to pay a lump sum in satisfaction of the services rendered in preparing the plans and in obtaining bids was to afford the corporation an opportunity to exercise its discretion as to the completion of a building in accordance with the plaintiffs' plans and specifications.

The plans prepared by the plaintiffs were not used by Webb in the construction of the warehouse which he erected. Why he did not use the plans and employ the plaintiffs to complete the building as planned we need not inquire. The building was smaller than the one designed by the plaintiffs; it was erected only partly on the ground on which the other building was to be erected; it contained nine stories while the plans prepared by plaintiffs provided for a six story building; it cost $343,-000.00 instead of $577,000.00, the estimated cost of the plaintiffs' building, and it was different in shape and differently arranged.

We are all of the opinion that the defendant was not required under the contract to employ the services of the plaintiffs as architects in the construction of another and different building erected on the premises in question according to plans and specifications different from those prepared by the plaintiffs. He is, therefore, not liable to the plaintiffs in this action, and the judgment of the court below must be affirmed.

The other questions argued by counsel become immaterial in the view we take of the case, and need not be considered.

Judgment affirmed.